# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BARRY A. BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 17-2671-KHV** |
| | ) | |
| **NANCY A. BERRYHILL, Commissioner of** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Barry A. Bennett appeals the final decision of the Commissioner of Social Security to partially grant disability benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 et seq. and supplemental security income benefits under Title XVI of the SSA, 42 U.S.C. § 1381 et seq. For reasons stated below, the Court affirms the Commissioner's decision.

## Procedural Background

On April 22, 2010, plaintiff filed applications for disability insurance and supplemental security income benefits, alleging that he became disabled on January 1, 2009. The State agency denied plaintiff's claims initially and on reconsideration. On January 5, 2012, an Administrative Law Judge ("ALJ") issued a decision finding that plaintiff was not disabled and denying benefits. Tr. 119. On November 9, 2012, the Appeals Council issued a decision remanding the case back to the ALJ for further hearing. Tr. 137. On September 3, 2013, a second ALJ issued a decision finding that plaintiff was not disabled and denying benefits. Tr. 23. On August 21, 2014, the Appeals Council declined review of that decision. Tr. 6. Plaintiff then sought judicial review. On January 27, 2016, District Judge Sam A. Crow issued an order reversing the Commissioner's decision and remanding for further hearing. See Bennett v. Colvin, 2016 WL 320218, at *7 (D.

Kan. Jan. 27, 2016).

On September 20, 2017, pursuant to Judge Crow's remand order, a third ALJ issued the decision presently before the Court. Tr. 701. The ALJ found that based on the application for a period of disability and disability insurance benefits filed on April 22, 2010, plaintiff was not disabled under Sections 216(i) and 223(d) of the SSA through June 30, 2014, the date last insured. Tr. 720. Based on the application for supplemental security income protectively filed on April 22, 2010, the ALJ found that under Section 1614(a)(3)(A) of the SSA plaintiff has been disabled since December 1, 2016, when he became an individual of advanced age. Id. Plaintiff appeals to this Court the final decision of the Commissioner.

## Standard Of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). It requires "more than a scintilla, but less than a preponderance." Id. Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Framework For Analyzing Claims Of Disability

Plaintiff bears the burden of proving disability under the SSA. Wall, 561 F.3d at 1062. Plaintiff is under a disability if he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines (1) whether plaintiff has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment or combination of impairments and (3) whether the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51. If plaintiff satisfies steps one, two and three, the Commissioner will automatically find him disabled. If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific factual findings regarding plaintiff's abilities in three phases. See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). First, the ALJ determines plaintiff's physical and mental residual functional capacity ("RFC"). Id. at 1023. Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work. Id. Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two. Id. If plaintiff satisfies step four, i.e. if plaintiff shows that he is not capable of performing past relevant work,

the burden shifts to the Commissioner at step five to establish that plaintiff is capable of performing

other work in the national economy.   Williams, 844 F.2d at 750-51.

## Factual Background

The following is a brief summary of the record.

Plaintiff was born on December 2, 1961.   He claims disability beginning on January 1, 2009, at age 47, because of an anxiety disorder, depression, hypertension, diabetes, insomnia, left shoulder pain, back pain and right flank pain.   Tr. 743-47, 751, 754.   Plaintiff has a high school equivalent education and has previous work experience as a bus driver, route delivery driver and tractor trailer operator.   Tr. 742, 758, 1179.   Plaintiff has not engaged in substantial gainful activity since January 1, 2009.   Tr. 708.

## I.    Medical Evidence

Between 2010 and plaintiff's most recent administrative hearing held on May 3, 2017, plaintiff sought treatment from at least 14 doctors, Licensed Clinical Social Workers ("LCSW"), nurse practitioners and therapists.   See Plaintiff's Social Security Brief (Doc. #8) filed March 22, 2018 at 5-27.   On March 19, 2009, plaintiff began receiving treatment initially for back pain and then for left shoulder pain that radiated to his hand.   Tr. 454-57, 462-63, 644, 665-68, 678.   On July 16, 2010, plaintiff met with an LCSW regarding various complaints including trouble sleeping, stress regarding inability to work, shoulder pain, feelings of sadness, depression and weight loss.   Tr. 482.   The LCSW diagnosed plaintiff with Dysthymic Disorder, Generalized Anxiety Disorder, Major Depressive Disorder (Recurrent, Mild) and Adjustment Disorder With Mixed Anxiety And Depressed Mood.   Tr. 485.

On October 23, 2010, Dr. Jay Hughey conducted a consultative exam of plaintiff's physical

RFC. Tr. 512-15. Dr. Hughey reported that plaintiff had a limited range of motion in his left shoulder. Tr. 513. Plaintiff's grip strength and dexterity were preserved. Tr. 514. Plaintiff walked without difficulty, had mild difficulty squatting and rising from a sitting position and moderate difficulty hopping. Id.

During the relevant period, plaintiff continued to seek treatment for anxiety, depression, pain and insomnia. Tr. 579-99, 651-61, 670-73, 677-86, 1285-1307, 1320-1324. With some variability, his depression and anxiety improved over time. See, e.g., Tr. 1290, 1297, 1299; see also Tr. 745 (plaintiff's depression in remission).[1]

## II. Plaintiff's Testimony

Plaintiff testified that he bathes and dresses himself, sometimes prepares his own meals and shops with his wife. Tr. 750. On an average day, plaintiff can walk ten or 15 minutes and can stand for five to ten minutes. Tr. 751. Plaintiff can sit for two hours and can push five pounds. Id. Plaintiff has a very limited ability to drive. Tr. 750.

Plaintiff testified that he has an anxiety disorder which prevents him from completing tasks and causes panic attacks. Tr. 743. Deadlines and timeframes cause him stress. Tr. 755. Plaintiff has difficulty communicating and experiences medication side effects such as slowness and drowsiness. Tr. 755-56.

Plaintiff testified that he has problems with his left shoulder related to rotator cuff surgery in his twenties. Tr. 744, 746. He experiences pain on his right side, which he attributes to overuse and a childhood fall. Tr. 746, 752. Plaintiff's right-side pain is aggravated by bending over or twisting in a certain way, and when he tries to vacuum. Tr. 754.

---

[1] The date of plaintiff's remission is not clear from the record.

### III.    Medical Opinions

On November 5, 2010, Dr. Gerald Siemsen, a State agency medical consultant, reviewed the record and affirmed the initial physical RFC assessment from July 12, 2010, which found that plaintiff could perform light work with no overhead reaching.    Tr. 107-118, 518-19.    On reconsideration, the agency's single decision-maker recommended that Dr. Siemsen affirm the initial RFC.    Tr. 518.    Dr. Siemsen's case analysis does not set forth specific findings and only states, "I have reviewed all the evidence in the file and the RFC and/or assessment of 7-12-10 is affirmed as written."    Tr. 519.

Regarding plaintiff's mental RFC, Dr. Regina Carolina gave conflicting opinions.    See Tr. 716-17.    In her first opinion dated December 28, 2010, Dr. Carolina found that plaintiff had only slight impairments in 13 categories and moderate impairments in three categories.    Tr. 549-51. She opined that these limitations began in January of 2010.    Tr. 551.    In her second opinion dated April 24, 2012, Dr. Carolina found that plaintiff had nine moderate and ten extreme mental impairments.    Tr. 629-31.    She opined that these more severe limitations began when she first saw plaintiff on July 26, 2010, i.e. before she issued her first opinion.    Tr. 631.

On January 14, 2011, LCSW James Reinerio evaluated plaintiff's mental RFC.    Tr. 552-54.    Reinerio found eight slight, one moderate, five marked and four extreme impairments.    Id. Reinerio noted that plaintiff had an "extreme and firm belief that he is going to die when anxiety sets in which invariably brings about panic symptoms."    Tr. 553.    Reinerio stated in his opinion that plaintiff's limitations began in 2001.    Tr. 554.

On October 8, 2010, Dr. Charles Fantz, Ph.D., a State agency reviewing psychologist, assessed plaintiff's mental RFC.    Tr. 507-09.    He found that plaintiff was moderately limited in

three categories.   Dr. Fantz determined that plaintiff (1) has the ability to understand and remember simple and intermediate level instructions; (2) could focus and persist at simple routine and intermediate level tasks for an eight-hour day but would have difficulty with more complex tasks, particularly tasks that required sustained concentration for more than two hours without a break; (3) had no social interaction limitations; and (4) could adapt to most work situations that did not require independent planning and goal setting.   Tr. 509.

## IV.   Third-Party Opinions

On July 16, 2010, Social Security Administration employee J. Harper conducted a 30-minute in-person interview with plaintiff and completed plaintiff's disability report.   Tr. 342-44. Harper reported that plaintiff had difficulty using his hands, sat without much movement and showed discomfort or pain.   Tr. 343.

On May 11 and July 27, 2010, and June 18 and September 6, 2015, plaintiff's wife submitted third-party function reports regarding plaintiff's condition.   Tr. 317-24, 353-60, 1074-81, 1112-20.

In May of 2010, plaintiff's former supervisor completed a Social Security Administration Work Activities Questionnaire regarding plaintiff's job performance.   Plaintiff's supervisor reported that in nine categories plaintiff could generally perform the job responsibilities without problems (the highest possible rating).   In two categories – adapting to work changes and acceptable attendance – plaintiff's supervisor stated that plaintiff had some difficulty (the second highest possible rating).   Tr. 337-40.

## V.   Vocational Expert Testimony

The ALJ asked the vocational expert about the work opportunities for a person who can

perform unskilled light work; can occasionally climb stairs and ramps; can never climb ropes, ladders or scaffolds; can occasionally stoop, kneel and crouch; can never crawl; can never reach overhead with the left upper extremity; should work in a temperature controlled environment; should avoid concentrated exposure to unprotected heights, excessive vibrations and hazardous machinery; can have no more than occasional contact with the public and coworkers; and cannot perform high production rate jobs but can perform low and medium rate production jobs.  Tr. 759.

The vocational expert testified that a person with the above limitations would be unable to perform plaintiff's past work.  Tr. 759.  Such an individual could, however, perform light, unskilled occupations such as folding machine operator, electrical subassembler and patching machine operator.  Tr. 760.

## VI.    Judge Crow's Remand Order

On January 27, 2016, Judge Crow determined that substantial evidence did not support the mental RFC assessment in the ALJ decision of September 3, 2013.  Bennett, 2016 WL 320218, at *7.  The ALJ had found that plaintiff had moderate limitations in social functioning and concentration, persistence or pace, but failed to explain why she included these limitations but not others.  Id. at *6.  The ALJ had also failed to comply with Social Security Ruling ("SSR") 96-8p, which required her to explain how the evidence supported her specific mental RFC findings. Judge Crow found that this failure was particularly problematic in light of the fact that the ALJ rejected all four medical opinions regarding plaintiff's RFC.  Id.   In addition, Judge Crow directed the ALJ and/or plaintiff's counsel to "endeavor to contact Dr. Carolina and obtain an explanation for the discrepancies" in her reports from December 28, 2010 and April 24, 2012.  Id. at *7.

## VII.   ALJ Findings

On September 20, 2017, the third ALJ made the following findings:

1.    The claimant met the insured status requirements of the Social Security Act through June 30, 2014.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    Since the alleged onset date of disability, January 1, 2009, the claimant has had the following severe impairments: a history of left rotator cuff surgery, obesity, a major depressive disorder, generalized anxiety disorder, and a panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    Since the alleged onset date of disability, January 1, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that since January 1, 2009, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, and crouch. He can never crawl. He cannot reach overhead with the left upper extremity. He requires a temperature controlled environment and must avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery. He also is limited to unskilled tasks with no fast or high production rate and only occasional contact with the public and coworkers.

6.    Since January 1, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On December 1, 2016, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has a GED and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.       Prior to December 1, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on December 1, 2016, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Prior to December 1, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     Beginning on December 1, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.     The claimant was not disabled prior to December 1, 2016, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13.     The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2014, the date last insured (20 CFR 404.315(a) and 404.320(b)).

## Analysis

Plaintiff argues that substantial evidence does not support the ALJ decision. Specifically, plaintiff asserts that (1) substantial evidence does not support the ALJ findings regarding his physical impairments RFC; (2) substantial evidence does not support the ALJ findings regarding his mental impairments RFC; (3) the ALJ failed to perform the requisite function-by-function assessment of plaintiff's RFC; (4) the Commissioner failed to sustain her burden at step five; and (5) substantial evidence does not support the ALJ findings regarding his RFC because the ALJ either failed to consider or rejected certain third-party statements. See Plaintiff's Social Security Brief (Doc. #8) at 28-38.

## I. Physical Impairments

The ALJ determined that plaintiff's physical RFC is as follows:

> After careful consideration of the entire record, the undersigned finds that since January 1, 2009, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, and crouch. He can never crawl. He cannot reach overhead with the left upper extremity. He requires a temperature controlled environment and must avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery.

Tr. 709. Plaintiff argues that substantial evidence does not support this determination. Plaintiff asserts that the ALJ improperly gave considerable weight to the opinion of Dr. Gerald Siemsen,[2] the State agency reviewing physician, and should have obtained a medical opinion from an examining physician. Plaintiff's Social Security Brief (Doc. #8) at 28-29.

The ALJ must consider the medical opinions in the record and discuss the weight which he assigns to each. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). Under 20 C.F.R. § 404.1513(a)(1), the ALJ may consider a non-examining physician's opinion. Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007). As noted, the Court's limited scope of review precludes it from reweighing the evidence or substituting its judgment for that of the Commissioner. Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1500 (10th Cir. 1992). The ALJ does not have a duty to further develop the record unless evidence suggests a reasonable possibility that a severe impairment exists. See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).

---

[2]     Judge Crow addressed this argument in his decision dated January 27, 2016 as follows: "The assessment affirmed by Dr. Siemsen contained some narrative discussion of the evidence (R. at 113, 114, 116, 118), and the court finds no clear error in reliance on this opinion, especially given the absence of any conflicting opinion." Bennett, 2016 WL 320218, at *7.

Plaintiff asserts that the ALJ improperly gave considerable weight to Dr. Siemsen's opinion of November 5, 2010 and that the ALJ should have further developed the record. See Plaintiff's Social Security Brief (Doc. #8) at 28-30. Dr. Siemsen's opinion affirms the initial RFC of July 12, 2010, which stated that plaintiff is able to perform light work with no overhead reaching. Tr. 518-19.

The ALJ did not err. The ALJ discussed the medical opinion of Dr. Siemsen along with other medical evidence such as the consultative physical examination by Dr. Hughey. Tr. 710-11. The ALJ also considered more recent evidence, such as plaintiff's report that in March of 2016, he was finishing his basement. Tr. 717. The ALJ explained that he gave Dr. Siemsen's opinion considerable weight because Dr. Siemsen "has medical expertise, familiarity with the disability program, and reviewed all of the medical evidence of record and the residual functional capacity assessment of the single decision-maker in formulating his opinion." Id. The ALJ did not err in relying upon Dr. Siemsen's opinion, combined with other evidence from the record, to determine plaintiff's physical RFC. See Tr. 512-15, 717.

## II. Mental Impairments

The ALJ determined that plaintiff's mental impairments RFC is as follows: "He also is limited to unskilled tasks with no fast or high production rate and only occasional contact with the public and coworkers." Tr. 709. Plaintiff argues that substantial evidence does not support this finding because it is inconsistent with the opinions of Dr. Fantz, LCSW Reinerio and Dr. Carolina. See Plaintiff's Social Security Brief (Doc. #8) at 35. Plaintiff further asserts that the ALJ erred by finding that he had a limited ability to interact with the public and co-workers but not with supervisors. Id. The Court finds that the ALJ reasonably weighed these opinions and explained

his reasoning for the weight he gave to each.   Furthermore, plaintiff admitted that he does not have a problem interacting with supervisors.   Tr. 373, 1088, 1133.

A.   Dr. Fantz

The ALJ gave partial weight to the opinion of Dr. Charles Fantz, a State agency reviewing psychologist, in October of 2010.   Tr. 715.   The ALJ accepted Dr. Fantz's finding that plaintiff "has the ability to focus and persist at simple and routine tasks but would have difficulty with more complex or detailed tasks requiring sustained concentration."   Id.   The ALJ rejected Dr. Fantz's finding that plaintiff did not have an impaired ability to interact socially in a work setting.   Id.   The ALJ explained that Dr. Fantz's finding was inconsistent with psychiatric and therapy notes.   Id.   Moreover, plaintiff's argument that the ALJ should have given greater weight to Dr. Fantz's opinion is counterproductive – the rejected finding did not support plaintiff's claim.

Plaintiff's argument that the ALJ should have also found that plaintiff has a limited ability to interact with supervisors is without merit; plaintiff admitted that he had no problem interacting with authority figures.   See Tr. 373, 1088, 1133.

B.   LCSW Reinerio

The ALJ gave partial weight to LCSW Reinerio's medical source statement dated January 14, 2011.   Tr. 716.   The ALJ accepted Reinerio's finding that plaintiff had slight or no impairment in his ability to understand and carry out simple tasks and sustain concertation and attention.   Id.   The ALJ rejected the finding that plaintiff had marked or extreme limitation in his ability to maintain a work schedule and perform various work-related tasks.   Tr. 716.   The ALJ properly stated the weight which he gave to Reinerio's findings and explained that he rejected Reinerio's finding of marked or extreme limitations in work-related abilities because the record

indicates that plaintiff regularly performs similar tasks.   Id.

C.   Dr. Carolina

Finally, the ALJ explained that he did not give controlling weight to Dr. Carolina's medical source statements from 2010 and 2012 because they are "grossly inconsistent" with one another. The ALJ attempted to contact Dr. Carolina multiple times but was unable to obtain a clarification of her opinions.   Tr. 717, 736-37, 1178, 1181-82, 1233.

The ALJ explained his reasoning for the weight he gave to each medical opinion regarding plaintiff's mental impairments.   His determination as to plaintiff's RFC was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Lax, 489 F.3d at 1084.   In determining whether substantial evidence supports the ALJ's decision, the Court cannot reweigh the evidence and the Commissioner's findings are binding.   Hendron v. Colvin, 767 F.3d 951, 956 (10th Cir. 2014).

III.   **Function-By-Function Assessment**

Plaintiff asserts that the ALJ erred by assigning an exertional category of "light work" without first engaging in a function-by-function assessment of plaintiff's RFC.   Plaintiff's Social Security Brief (Doc. #8) at 31-32.   Plaintiff argues that the ALJ's reliance on the definition of "light work" in 20 C.F.R. § 404.1567(b) and § 416.967(b) does not sufficiently explain how the ALJ assessed plaintiff's ability to walk, sit, stand, push and pull.   Id.   The Commissioner argues that the ALJ reasonably evaluated the evidence in assessing plaintiff's RFC and that the ALJ is not required to separately discuss and make findings regarding plaintiff's ability to sit, stand, walk, lift, carry, push or pull.   Commissioner's Response Brief (Doc. #9) at 18-19 (citing Hendron, 767 F.3d at 956-57).

SSR 96-8p states that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. The Ruling states that at step four, the RFC should not be initially expressed in terms of exertional work categories (sedentary, light, medium, heavy or very heavy) because the first issue at this step is whether plaintiff is able to do past relevant work as he actually performed it. Id. Here, the ALJ found that plaintiff has been unable to perform any past relevant work since his alleged onset disability date of January 1, 2009. Tr. 718.

A function-by-function analysis is also important at step five, when the ALJ applies the Medical-Vocational Guidelines to determine whether plaintiff can perform other work. Id. A function-by-function analysis ensures that the ALJ does not overlook "limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." SSR 96-8p, at *4. Where it is clear that the ALJ considered the functions, the Tenth Circuit does not require separate discussion of each one. See Hendron, 767 F.3d at 956.

The Court rejects plaintiff's argument that the ALJ failed to assess the RFC on a function-by-function basis. Plaintiff's Social Security Brief (Doc. #8) at 31. At the beginning of the RFC, the ALJ stated his conclusion that plaintiff has the RFC to perform light work (with accommodations), but the ALJ did not begin the analysis there. Tr. 709. The ALJ explained in detail how he reached the determination that plaintiff had the RFC to perform light work. See Tr. 710-18. The ALJ discussed evidence regarding plaintiff's ability to walk, stand, sit, lift, carry and push. Tr. 710. The ALJ discussed plaintiff's daily activities and his alleged pain in his nondominant left shoulder. Id. The ALJ discussed Dr. Hughey's consultative physical examination on October 23, 2010, noting plaintiff's grip strength, range of motion in joints, motor

-15-

strength in left upper extremity, ability to walk, mild difficulty in squatting and moderate difficulty hopping. Tr. 710-11. The ALJ discussed medical evidence from numerous primary care visits between March of 2011 and February of 2016, and connected the evidence to his finding that plaintiff was limited to light work with accommodations for his left extremity. Tr. 711. The ALJ discussed plaintiff's obesity and the fact that plaintiff had "no impairment in gait or station to support a limitation in standing and walking as alleged." The ALJ further noted that plaintiff's bilateral grip strength and normal fine and gross manipulation support an ability to lift and carry 20 pounds occasionally and ten pounds frequently. Id. The ALJ considered plaintiff's RFC on function-by-function basis. The ALJ's decision to structure his decision by stating his conclusion first and then explaining his reasoning is not error.

## IV.    Step Five Burden

Based on the vocational expert testimony, the ALJ found that before December 1, 2016, with certain limitations such as no overhead reaching with his left arm, plaintiff could perform the requirements of representative light and unskilled occupations such as folding machine operator, sub assembler and patching machine operator. Tr. 709, 711, 719. After inquiring whether the expert testimony was consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that it was and found that plaintiff could perform the requirements of the identified jobs.

Plaintiff argues that the Commissioner did not carry her burden at step five because the ALJ failed to resolve a conflict between the Commissioner's definition of "reaching" (extending hands and arms in any direction), the DOT job descriptions (requiring frequent reaching) and the vocational expert testimony (based on hypothetical, excluding overhead reaching with left arm).

Plaintiff's Social Security Brief (Doc. #8) at 30-31; Tr. 759-61.   Plaintiff argues that he could not perform the jobs stated by the vocational expert because they involve frequent "reaching" as defined by the Commissioner (i.e., extending hands and arms in any direction).[3]   Plaintiff's Social Security Brief (Doc. #8) at 31.

Before the ALJ relies on vocational expert testimony as substantial evidence, he or she must investigate whether the testimony is consistent with the DOT.   Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999).   Under SSR 00-4p, an ALJ should identify and resolve conflicts between vocational testimony and the DOT by inquiring, on the record, as to whether the two are consistent.   SSR 00-4p, 2000 WL 1898704, at *2.   Where a conflict exists, the ALJ may rely upon vocational expert testimony when the record affords an adequate basis for doing so.   Gibbons v. Barnhart, 85 F. App'x 88, 93 (10th Cir. 2003).   Here, the ALJ asked the vocational expert if her testimony was consistent with the DOT and she responded affirmatively.   Tr. 761.   The ALJ also stated that he "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."   Tr. 719.   The ALJ had no duty to further investigate and did not err in relying on the vocational expert testimony.   See Gibbons, 85 F. App'x at 93.

The Court also finds that the Commissioner's broad definition of "reaching" does not conflict with the vocational expert's more specific testimony that plaintiff could perform jobs that require reaching with one arm.   The Tenth Circuit and other federal courts have declined to find a conflict in similar circumstances.   For example, in Segovia v. Astrue, the Tenth Circuit rejected

---

[3]         Judge Crow addressed and rejected this argument in his decision dated January 27, 2016.  See Bennett, 2016 WL 2320218, at *3-5.

the argument that the vocational expert testimony conflicted with the DOT because the relevant jobs required frequent reaching but did not separately classify overhead reaching. 226 F. App'x 801, 804 (10th Cir. 2007). The court stated, "The vocational expert was aware of [plaintiff's] limitations on overhead reaching, and he testified both that [plaintiff] could perform the jobs he identified and that his opinion of the jobs open to [plaintiff] was consistent with the DOT's specifications." Id. Relying on Segovia, this court held in Williams v. Astrue that "a job requiring frequent reaching, handling and fingering does not necessarily require that a claimant be able to frequently reach, handle and/or finger with both hands or with the non-dominant hand." 2010 WL 4291918, at *8 (D. Kan. Oct. 26, 2010). It further held that vocational expert testimony does not conflict with the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles and the DOT when, as here, the testimony clarifies how broad categorizations apply to a specific case. Id.

Similarly, in Carey v. Apfel, the Fifth Circuit evaluated an alleged conflict between the vocational expert's specific testimony that plaintiff could perform certain jobs with one hand and a DOT description stating that those jobs require some ability to finger and handle things. 230 F.3d 131, 146 (5th Cir. 2000). The court held that this alleged conflict was "tangential" and "actually reduce[d] to a factual disagreement" about the abilities of a person with one arm. The court also noted that plaintiff was represented by counsel and had the opportunity to cross-examine the vocational expert. See id. at 146.

Here, if plaintiff had a significant issue regarding use of the term "reaching," counsel should have sought clarification during cross-examination. See id. ("[Plaintiff] basically contends that the vocational expert's testimony that he could perform certain jobs requiring manual

dexterity . . . should have been explored further, when [plaintiff] himself failed to do so in the administrative hearing.").

## V.     Third-Party Statements

Plaintiff argues that ALJ findings regarding the RFC are not supported by the record as a whole because the ALJ failed to discuss (1) the field office observations of J. Harper, a Social Security Administration employee, reported in plaintiff's disability report in July of 2010 and (2) the work activities questionnaire from plaintiff's former supervisor in May of 2010.   Plaintiff also asserts that the ALJ erroneously rejected the function report statements of plaintiff's wife. Plaintiff's Social Security Brief (Doc. #8) at 33-35.

While the record must show that the ALJ considered all the evidence, the ALJ is not required to discuss every piece of evidence.   Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).   "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."   Id.   Social Security regulations require the Commissioner to consider opinion evidence from third parties, including agency employees.   Perkins v. Colvin, 2013 WL 4517295, at *4 (D. Kan. Aug. 26, 2013) (citing 20 C.F.R. §§ 404.1513(d)(4), 416.913(a)(4)).   The Tenth Circuit requires that the ALJ's decision demonstrate that he considered third-party statements, but does not require the ALJ to make specific written credibility findings for each statement.   Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006).   An ALJ's failure to discuss evidence that is largely cumulative of other evidence is not grounds for remand.   Davis v. Astrue, 237 F. App'x 339, 342 (10th Cir. 2007).

A.    Social Security Administration Employee J. Harper's Report

Harper's statement observed that plaintiff showed discomfort or pain and had difficulty using his hands.   Tr. 343.   Plaintiff's claims of pain and discomfort appear throughout the record and the ALJ specifically addressed them.   Thus, Harper's observation regarding plaintiff's pain and discomfort is largely cumulative of other evidence.   See Davis, 237 F. App'x at 342.

Harper's statement regarding plaintiff's hands is not significantly probative because plaintiff does not claim to have any problem with his hands.   See, e.g., Tr. 1088 (in function report dated June 18, 2015, plaintiff did not check box indicating that his condition affects his hands). In addition, the ALJ discussed plaintiff's ability to use his hands.   See Tr. 711 (noting bilateral grip strength of 60 pounds and normal fine and gross manipulation).   Thus, the ALJ did not err in failing to discuss Harper's observations.

B.    Former Supervisor's Work Activities Questionnaire

Plaintiff asserts that the ALJ failed to address a work activities questionnaire from plaintiff's former supervisor.   Plaintiff's Social Security Brief (Doc. #8) at 35; see Tr. 337-40. Plaintiff's supervisor reported that in nine categories plaintiff could generally perform his job responsibilities without problems (the highest possible rating).   In two categories – adapting to work changes and acceptable attendance – plaintiff's supervisor stated that plaintiff had some difficulty (the second highest possible rating).   Tr. 337-40.   The Court finds that the questionnaire is not significantly probative because it relates to plaintiff's past employment as a delivery driver, which the ALJ found exceeds plaintiff's RFC.   See Tr. 718.

C.    Function Report By Plaintiff's Wife

Finally, plaintiff argues that the ALJ "erroneously rejected" the statements of plaintiff's

wife while at the same time applying an incorrect legal standard to her statements. The Court finds that contrary to plaintiff's assertion, the ALJ did not "reject" the statements of plaintiff's wife, which she made in numerous function reports, and did not apply an incorrect legal standard. The ALJ addressed plaintiff's wife's statements and explained that he gave them "limited weight" because she is not a medical expert and has an interest in plaintiff's receipt of benefits. Tr. 717. As the Tenth Circuit held in Adams v. Chater, "[I]t is clear that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion." 93 F.3d 712, 715 (10th Cir. 1996).

**Conclusion**

Substantial evidence supports the ALJ's decision that plaintiff became disabled on December 1, 2016.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

Dated this 30th day of November, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge